

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE **NOV 0 6 2014**

~~Madsen, C.J.~~
CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on Nov. 6, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| THERESA SCANLAN,<br><br>Respondent,<br><br>v.<br><br>KARLIN TOWNSEND and "JOHN DOE" TOWNSEND, wife and husband,<br><br>Petitioners. | NO. 89853-7<br><br>EN BANC<br><br>Filed **NOV 0 6 2014** |

GORDON McCLOUD, J.—After Theresa Scanlan filed a personal injury action against Karlin Townsend,[1] a process server delivered a copy of the summons and complaint to Townsend's father at his home. But Townsend did not live at her father's home. Townsend's father later handed the summons and complaint directly to Townsend within the statute of limitations.

---

[1] Townsend changed her last name to Emerson in 2009 but uses Townsend for this lawsuit.

The trial court dismissed for lack of service, and the Court of Appeals reversed. *Scanlan v. Townsend*, 178 Wn. App. 609, 315 P.3d 594 (2013). We granted review of Townsend's claim that Scanlan failed to comply with RCW 4.28.080(15), which requires serving a copy of the summons "to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein." *Scanlan v. Townsend*, 180 Wn.2d 1008, 325 P.3d 914 (2014). Because Scanlan establishes effective personal service on Townsend, we affirm the Court of Appeals.

FACTS

On October 28, 2008, Scanlan and Townsend were involved in a car accident in Federal Way, Washington. Clerk's Papers (CP) at 1-2. On October 27, 2011, Scanlan filed a personal injury action against Townsend. *Id.*

On November 8, 2011, Scanlan asked ABC Investigations to locate Townsend's current residential address. CP at 37. ABC conducted a records search and identified two addresses—one in Puyallup, Washington, and one in Vancouver, Washington. *Id.* The Puyallup address "appear[ed] on a[] [Social Security number]/Address trace for the Defendant reported 05/2011. The United States Postal Service confirms mail delivery for the Defendant at this address." *Id.* Court records identified a particular Vancouver, Washington, address as Townsend's address "as of 10/04/2010." *Id.* This address "appear[ed] on a[] [Social Security

2

number]/Address trace for the Defendant reported between 1991 and 2009." *Id.* And Washington State Department of Licensing (DOL) records showed this address for Townsend "as of 07/25/2007." *Id.* Clark County tax assessor records listed Townsend's father, Charles William Pyne, "with whom the Defendant has resided in the past, as the current owner of the real property at [the Vancouver] address." *Id.* The DOL record showed a vehicle registered to Townsend with her father listed as a co-owner. *Id.*

An ABC process server tried to serve a copy of the summons and complaint upon Townsend at the Puyallup address on December 8, 2011. *Id.* The resident at this address told the process server that he did not know Townsend. *Id.*

Almost two weeks later, the process server tried to serve a copy of the summons and complaint upon Townsend at the Vancouver address. *Id.* The process server's declaration of service states that on December 21, 2011, the process server delivered two copies of the summons and complaint at a specified address in "VANCOUVER, Clark County, WA," to someone he described as "Bill White, CO-RESIDENT . . . a person of suitable age and discretion who stated they reside at the defendant's/respondent's usual place of abode listed above." CP at 3 (boldface omitted).

Townsend therefore moved to dismiss the complaint for lack of service on March 15, 2012. CP at 4-9. To support this motion, Townsend filed a declaration

3

stating that she had lived at the Puyallup address from March 2011 to October 2011 and had lived in Auburn since October 2011. CP at 11. She stated that the Vancouver address "is my parents['] address and I have not resided there since 1991. I have not used this address as my usual abode for any reason since then. I would visit my parents at their address 2-3 times a year." *Id.* Townsend also stated, "My usual abode at the time of attempted service was my home at [a specified address in] Auburn, Washington." *Id.*

In opposition to Townsend's motion to dismiss, Scanlan submitted a declaration from an ABC investigator explaining the efforts to locate Townsend's residential address. CP at 37. She also submitted an amended declaration of service from the process server, stating,

> On the 21st day of December, 2011, at approximately 4:40 PM, I arrived at the address of . . . VANCOUVER, Clark County, WA. . . . I knocked on the front door and a gray-haired white male . . . opened the door . . . . I asked him if Karlin Townsend was there and he replied she was not. I recall saying I had some paperwork for her and asking him if she lived there and he respond[ed] that she was staying there. He was very talkative and friendly, and I do believe I recall him also mentioning Karlin came back to live with us. I told him that I had some paperwork for her and this was the address I was given, I then asked if I could leave the documents with him. He replied he would take the documents and make sure she got them when she gets back. When I asked his name, he put out his hand to shake, said he was her father, and to the best of my knowledge I thought he said his name was Bill White. I shook his hand as I gave him my name, and then left.
>
> On the 21st day of December, 2011, at 4:49 PM, at the [same address specified above in] VANCOUVER, Clark County, WA . . . this

4

declarant served the above described documents upon KARLIN TOWNSEND and JOHN DOE TOWNSEND by then and there personally delivering 2 true and correct copy(ies) thereof, by then presenting to and leaving the same with John Doe, CO–RESIDENT/FATHER, a gray-haired white male . . ., a person of suitable age and discretion who stated they reside at the defendant's/respondent's usual place of abode listed above.

CP at 45 (boldface omitted).

Scanlan claimed that she established effective service on Townsend through substitute service of process because the process server "left a copy of the summons and complaint at the Defendant's usual abode with the defendant's father, a person of suitable age and discretion, who also resided at that house." CP at 25. Scanlan asked the court to deny Townsend's motion to dismiss or, alternatively, to conduct an evidentiary hearing or continue the hearing on the motion to conduct discovery. *Id.* The trial court reserved its ruling on the motion. Verbatim Report of Proceedings (VRP) (July 13, 2012) at 17-18.

Later, in a deposition, Townsend testified that her father delivered the summons and complaint to her at the end of December 2011 or in early January 2012 but did not specify exactly how he served her:

Q. . . . Did -- did you get documents from your dad?

A. They told me that they were there.

Q. Well, when this all occurred, December of 2011, what were you doing? Were you employed at that point?

A. I was working.

Q. Okay. And living where?

A. In Seattle, up here.

Q. Were you visiting your parents often during that period of time?

A. No.

Q. Well, this was just four days before Christmas. Had you -- did you spend --

A. I don't always have holidays off. I don't . . . have every holiday off.

Q. Okay. Do you know if you worked Christmas Day 2011?

A. Yeah, I believe I worked. Yes. I'm sorry.

Q. [The declaration of service] goes on to state, He replied he would take the documents and make sure she got them when she get[s] back. Did he give you those documents?

A. Yes, he did.

Q. Okay. And when did he give you the documents in relation to this conversation that apparently happened on the 21st of December of 2011?

A. I don't know.

. . . .

Q. Okay. So after the first of the year, maybe?

A. Yeah. Yes.

Q. And would you have gone to their house, or would they have come to visit you in Seattle, or what?

A. I can't remember if they came up here. I think I went down there.

CP at 75 (boldface omitted).

After discovery, Scanlan filed an amended response to Townsend's motion to dismiss for lack of service. She argued that the process server "left copies of the summons with the defendant's father, who was a person of suitable age and discretion then residing in the Vancouver residence. Furthermore, strong evidence indicates that the defendant resided at the Vancouver residence where substitute service was made." CP at 90. Scanlan also argued that Townsend's father served Townsend personally "by giving the summons and complaint to his daughter when she came to visit his Vancouver house in late 2011 or early 2012." CP at 95.

Townsend replied by filing a declaration from her father disputing these facts and stating, instead, "I recall specifically telling the process server that Karlin was my daughter and that she did not reside at this address. My recollection is that I told the process server that my daughter had her own residence in the Greater Seattle area." CP at 123. Townsend's father also stated in this declaration,

> I am aware of a declaration from the Process Server that states that I may have indicated that Karlin had "come back to live with us". I never made such a statement. In fact Karlin had recently purchased her own home in Auburn a few months previous to my conversation with the Process Server and, in any event, has not lived at my address in Vancouver, WA for a long time before the subject accident of October 28, 2008.

7

CP at 123-24. Townsend argued that this declaration demonstrated service of process was not effective because "[t]here can be no question that the Vancouver, WA address was NOT the usual abode of Defendant Karlin Townsend (now Emerson) at the time of purported service." CP at 120. She also argued that her father's "accidental service" on her was not valid personal service. *Id.*

At the hearing on Townsend's motion to dismiss, however, her attorney stipulated that Townsend's father delivered the summons and complaint to Townsend personally within the 90-day tolling period. VRP (July 13, 2012) at 4-5.

The trial court granted Townsend's motion to dismiss for lack of service. CP at 126-27. On the order granting the motion, the court wrote, "Defendant's deposition testimony that her father gave her the summons and complaint is insufficient proof of service." CP at 127.

The Court of Appeals reversed and remanded in a published decision. *Scanlan*, 178 Wn. App. 609. The court held that Scanlan established effective personal service of process: "[T]here is no dispute that Townsend's father was competent to effect service and that he personally delivered a copy of the summons and complaint to Townsend within the statute of limitations. Townsend's deposition testimony also established proof of service." *Id.* at 621.

This court granted Townsend's petition for review. *Scanlan*, 180 Wn.2d 1008.

8

## ANALYSIS

Townsend claims that Scanlan did not serve her properly before the three-year statute of limitations expired. Pet. for Review at 7; *see* RCW 4.16.080(2). Townsend argues that her father "is not competent to serve process because service upon him was defective in the first instance and cannot be cured by him fortuitously delivering the summons and complaint to his daughter." Pet. for Review at 7.

I.      A PLAINTIFF CAN SERVE A DEFENDANT USING EITHER PERSONAL OR SUBSTITUTE SERVICE

A plaintiff may commence an action by filing a complaint and serving the summons and complaint on the defendant within 90 days. RCW 4.16.170; Civil Rule (CR) 3(a). "'Proper service of the summons and complaint is essential to invoke personal jurisdiction.'" *Morris v. Palouse River & Coulee City R.R.*, 149 Wn. App. 366, 370-71, 203 P.3d 1069 (2009) (quoting *In re Marriage of Markowski*, 50 Wn. App. 633, 635-36, 749 P.2d 754 (1988)). Proper service of process must comply with both constitutional and statutory requirements, *Farmer v. Davis*, 161 Wn. App. 420, 432, 250 P.3d 138 (2011), but the only dispute in this case is about the statutory requirements. This court reviews de novo if service of process was proper. *See Streeter-Dybdahl v. Nguyet Huynh,* 157 Wn. App. 408, 412, 236 P.3d 986 (2010) (citing *Pascua v. Heil,* 126 Wn. App. 520, 527, 108 P.3d 1253 (2005)).

RCW 4.28.080(15) authorizes serving the summons on the defendant personally, or by substitute service—"leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein."[2] "[A]ny person over 18 years of age who is competent to be a witness in the action, other than a party" may serve process. CR 4(c). The Court of Appeals has held, in a context similar to the one presented here, "'Any person' means any person." *Brown-Edwards v. Powell*, 144 Wn. App. 109, 111, 182 P.3d 441 (2008) (citing *Roth v. Nash*, 19 Wn.2d 731, 734-35, 144 P.2d 271 (1943)).

The plaintiff bears the initial burden to prove a prima facie case of sufficient service. *Streeter-Dybdahl*, 157 Wn. App. at 412 (citing *Gross v. Sunding*, 139 Wn. App. 54, 60, 161 P.3d 380 (2007)). The party challenging the service of process must demonstrate by clear and convincing evidence that the service was improper. *Id.* (citing *Woodruff v. Spence*, 76 Wn. App. 207, 210, 883 P.2d 936 (1994)).

A plaintiff can establish service of process with an affidavit of service from a process server who is not a sheriff or deputy, "endorsed upon or attached to the summons." CR 4(g)(2). This affidavit must state the time, place, and manner of service. CR 4(g)(7). A plaintiff can also establish proof of service by "[t]he written

---

[2] Although the legislature amended this statute in 2011 and 2012, the amendments did not affect subsection (15). LAWS OF 2011, ch. 47, § 1; LAWS OF 2012, ch. 211, § 1.

10

acceptance or admission of the defendant, his agent or attorney" of the time, place, and manner of service. CR 4(g)(5), (7). But "[f]ailure to make proof of service does not affect the validity of the service." CR 4(g)(7). A "lack of return of service [neither] deprive[s] a court of jurisdiction, nor does it affect the validity of the service." *Jones v. Stebbins*, 122 Wn.2d 471, 482, 860 P.2d 1009 (1993).

II. THE ISSUE IN THIS CASE IS PERSONAL SERVICE, NOT SUBSTITUTE SERVICE

Townsend does not dispute that her father delivered a copy of the summons and complaint to her personally within the 90-day tolling period and that he met the criteria for a process server—he was over the age of 18, was competent to be a witness in the personal injury action, and was not a party to the case. Pet. for Review at 7; VRP (July 13, 2012) at 4-5. Townsend instead argues that RCW 4.28.080(15) "does not allow for service upon someone at a place that is not the defendant's usual abode and who does not reside with the defendant." Pet. for Review at 8. This is an argument about the sufficiency of substitute service.

Scanlan, on the other hand, argues, "Issues related to abode service are irrelevant to the determination of whether Ms. Townsend was properly served in this case," because Scanlan satisfied the requirements of the personal service prong of RCW 4.28.080(15). Resp't's Answer to Pet. for Review at 8; Suppl. Br. of Resp't at 5. Scanlan concludes that Townsend's father "was qualified to serve process and

11

personally served Ms. Townsend with the summons and complaint. Service in this manner complies with all of the personal service requirements and is good service." Resp't's Answer to Pet. for Review at 10.

This court has not yet addressed whether such direct, hand-to-hand—but "secondhand"—service satisfies our state's service of process requirements. RCW 4.28.080(15) lists specific prerequisites to personal service, but it does not say *who* has to do the service. CR 4(c) specifies who can accomplish service, which is anyone who is competent, over 18 years of age, and not a party. CR 4(c).

This court has previously held that we will not add additional limits on who can effect service onto the limits contained in CR 4(c). In *Roth*, 19 Wn.2d at 737-38, we held that a plaintiff's attorney could lawfully serve the summons and complaint upon the defendant. Interpreting the language of the precursor to CR 4(c),[3] we stated,

> The wording of the statute is categorical, unequivocal, and free from ambiguity. . . . By definite expression it not only specifies the persons, or class of persons, who shall serve the summons, but also with equal certainty indicates who shall not. It confers the particular official authority upon *any* person over twenty-one years of age, who is competent to be a witness in the action, and withholds such authority

---

[3] The statute at issue, Rem. Rev. Stat. § 225 (Pierce's Code § 8437 (1926)), stated, "In all cases, except when service is made by publication, as hereinafter provided, the summons shall be served by the sheriff of the county wherein the service is made or by his deputy, or by any person over twenty-one years of age, who is competent to be a witness in the action, other than the plaintiff." *See also* *Roth*, 19 Wn.2d at 734.

12

from only the plaintiff in such action. No distinction is made between the authority conferred upon the sheriff and that conferred upon other persons having the required qualifications. The statute is plain, certain, and unambiguous. A bare reading of its terms leaves no doubt as to its meaning. Consequently there is no room for interpretation.

*Id.* at 734-35 (interpreting Rem. Rev. Stat. § 225 (Pierce's Code § 8437 (1926))).

No reason exists to depart from this interpretation. It comports with our rules of statutory and court rule interpretation. *See State v. Delgado,* 148 Wn.2d 723, 729, 63 P.3d 792 (2003) ("'Under expressio unius est exclusio alterius, a canon of statutory construction, to express one thing in a statute implies the exclusion of the other.'" (quoting *In re Det. of Williams,* 147 Wn.2d 476, 491, 55 P.3d 597 (2002)). Nothing in the plain language of CR 4(c) precludes Townsend's father, who is over 18 years old, is competent to be a witness, and is not a party, from having authority to serve Townsend.

Townsend argues that Division One's decision upholding such secondhand service conflicts with Division Three's decision in *Gerean v. Martin-Joven,* 108 Wn. App. 963, 33 P.3d 427 (2001). Pet. for Review at 9. Scanlan, on the other hand, analogizes this case to Division Three's decision in *Brown-Edwards v. Powell,* 144 Wn. App. at 112, which distinguished *Gerean* and upheld this sort of secondhand service. Resp't's Answer to Pet. for Review at 9-10. Townsend contends, "The *Brown-Edwards* court's assessment of *Gerean* is incorrect." Pet. for Review at 11.

We agree with Scanlan. When analyzed in detail, *Gerean* and *Brown-Edwards* construe RCW 4.28.080(15) and CR 4 consistently to allow the secondhand service at issue here.

In *Gerean*, the defendant lived with her parents in Spokane while her husband was overseas on military service. *Gerean*, 108 Wn. App. at 967. On December 21, 1996, the plaintiff and the defendant were involved in a car accident. The defendant moved to Walla Walla in January 1999. *Id.* On December 17, 1999, the plaintiff filed a personal injury lawsuit against the defendant. *Id.* On January 2, 2000, the process server left a copy of the summons and complaint with the defendant's father at his home. *Id.* The defendant's father gave these documents to the defendant while he was in Walla Walla on business the next day. *Id.* The trial court dismissed the lawsuit for insufficient service of process. *Id.* at 968.

The plaintiff argued on appeal that she served the defendant properly "by setting in motion a series of events that culminated in Ms. Martin-Joven receiving the summons." *Id.* at 969. The Court of Appeals characterized this as a substitute service argument and affirmed the dismissal, concluding,

> The argument that defective substitute service is cured if the summons is fortuitously delivered by a person who is over the age of 18 and not a party to the lawsuit boils down to the argument that actual notice should be sufficient. But the cases in this state are clear: actual notice does not constitute sufficient service.

*Id.* at 972 (citing *Thayer v. Edmonds*, 8 Wn. App. 36, 40, 503 P.2d 1110 (1972)).

14

In *Brown-Edwards*, the process server mistakenly delivered a copy of the summons and complaint to the defendant's neighbor. 144 Wn. App. at 111. The neighbor then delivered the documents to the defendant personally and even signed an affidavit stating that she was competent to serve the papers and that she served them. *Id.* The defendant submitted this affidavit in support of her motion for summary judgment. *Id.* at 114 (Brown, J., dissenting). The trial court denied the defendant's motion for insufficient service of process. *Id.* at 111.

Division Three, however, reversed. It treated this as a question about the sufficiency of personal service, rather than as a question about the sufficiency of substitute service, and held that such secondhand personal service of process sufficed. Division Three explained that this service met the requirements of RCW 4.28.080(15) because the neighbor was competent to serve process, delivered the pleadings personally to the defendant, and signed an affidavit of service. *Id.* at 112. The court explained,

> [The neighbor] certainly meets the criteria for a process server. Nothing in the rule requires that a process server have a contractual obligation to serve process. CR 4(c). Nor is there any requirement of proof of intent to serve process. CR 4(c). And we find nothing that would prohibit a person who comes into possession of a summons and complaint by defective service from being a competent process server. CR 4(c). The rule prohibits only a party to the action from serving process. CR 4(c); *Columbia Valley Credit Exch., Inc. v. Lampson,* 12 Wn. App. 952, 533 P.2d 152 (1975); *see State v. Delgado,* 148 Wn.2d 723, 729, 63 P.3d 792 (2003) ("'Under expressio unius est exclusio alterius, a canon of statutory construction, to express one thing in a

statute implies the exclusion of the other.'" (quoting *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002))). We conclude then that [the neighbor] was a competent process server. CR 4(c).

*Id.* at 111-12 (some citations omitted).

The court also addressed its prior decision in *Gerean* and held that *Gerean* "should be limited to its facts and the particular arguments made there." *Id.* at 112. The court in *Brown-Edwards* explained that the issue presented in *Gerean* "was whether the hired process server—and not [the defendant's father]—properly served Ms. Martin-Joven":

> Ms. Gerean contends that, by setting in motion a series of events that culminated in Ms. Martin-Joven receiving the summons, she complied with the statute.

> *Gerean*, 108 Wn. App. at 969. We concluded that was not enough. The plaintiff in *Gerean* did not argue that the defendant's father was competent to effect service nor did he file an affidavit of service. And so we did not address whether [the father's] act of delivering the summons to Ms. Martin-Joven, by itself, satisfied the statutory requirement for personal service.

*Id.* at 113 (citations omitted).[4]  The court stated, "Ultimately, we concluded in *Gerean* that service was insufficient because, while the hired process server's act

---

[4] In *Gerean*, the court addressed the defendant's father's qualifications to serve process on the defendant only in the context of discussing if personal service must comply with RCW 4.28.080(15) or the constitutional due process notice requirement. 108 Wn. App. at 970-71.

may have resulted in actual notice, it was not the required "'service.'" *Id.* (citing *Gerean*, 108 Wn. App. at 972).

Thus, *Gerean* addressed a substitute service argument, while *Brown-Edwards* addressed a personal service argument. Scanlan raises a personal service argument here similar to the one addressed in *Brown-Edwards* and distinguishable from the one addressed in *Gerean*. Townsend's father was competent to serve process and delivered the pleadings personally to Townsend. Although Townsend's father signed no affidavit of service, Townsend's deposition testimony and her attorney's stipulation that her father delivered the summons and complaint to her personally within the 90-day tolling period established sufficient proof of service under CR 4(g)(5).

Townsend also claims that the Court of Appeals' decision in this case conflicts with its decisions in *Gross v. Evert-Rosenberg*, 85 Wn. App. 539, 933 P.2d 439 (1997), *Lepeska v. Farley*, 67 Wn. App. 548, 833 P.2d 437 (1992), and *Mid-City Materials, Inc. v. Heater Beaters Custom Fireplaces*, 36 Wn. App. 480, 674 P.2d 1271 (1984). Pet. for Review at 9, 13-16. But those were all argued and decided based upon substitute service, not personal service. In *Gross*, the court declined to find effective substitute service of process when the process server left a copy of the summons and complaint at a house that the defendant owned but in which the defendant no longer resided. 85 Wn. App. at 543. In *Lepeska*, the court held that

substitute service on a son at his parents' home when he maintained his own separate residence within the jurisdiction did not satisfy the requirements of RCW 4.28.080(15) for substitute service. 67 Wn. App. at 551. In *Mid-City Materials*, the court held that substitute service was invalid when the plaintiff served the defendants, who lived in Kent, at their son's house in Federal Way. 36 Wn. App. at 483-84. In all three of these cases, the defendants never received copies of the summons and complaint. *Gross*, 85 Wn. App. at 542; *Lepeska*, 67 Wn. App. at 549-50; *Mid-City Materials*, 36 Wn. App. at 482. These cases do not apply here because they addressed only substitute service of process. Scanlan does not argue that she met the requirements for substitute service or that Townsend's father cured defective substitute service.

III. SCANLAN ESTABLISHES EFFECTIVE PERSONAL SERVICE OF PROCESS ON TOWNSEND

Townsend cites the cases discussed above, as well as *Gerean* and a number of cases from other jurisdictions, to support her argument that secondhand service of process is not sufficient. Pet. for Review at 13-15; Suppl. Br. of Pet'r Karlin Townsend at 6-11, 12-20.

As discussed above, *Gerean* does not apply here. Many of the out-of-jurisdiction cases upon which Townsend relies are also distinguishable because they did not address the sufficiency of direct, hand-to-hand, secondhand service.[5]

We recognize that two of the cases Townsend cites from New York interpreted similar service of process statutes in ways that support her position. In *Macchia v. Russo*, 67 N.Y.2d 592, 496 N.E.2d 680, 505 N.Y.S.2d 591 (1986), the process server delivered the summons to the defendant's son outside of the defendant's home. The son then went into the house and gave the summons to the defendant. The court held that the plaintiff failed to comply strictly with New York's personal service statute requiring "delivering the summons within the state to the person to be served." *Id.* at 594. The language of the New York statute is materially indistinguishable from the language of Washington's service of process statute, RCW 4.28.080(15); the secondhand, hand-to-hand delivery in this New York case is also materially indistinguishable from the secondhand, hand-to-hand delivery in our case. The New York court held that "delivery of a summons to the wrong person does not confer jurisdiction over defendant, even though the summons shortly

---

[5] *See Mahone v. Marshall Furniture Co.*, 142 Ga. App. 242, 235 S.E.2d 672 (1977); *Hill v. Ramey*, 744 N.E.2d 509 (Ind. Ct. App. 2001); *Watson v. Garza*, 316 S.W.3d 589 (Tenn. Ct. App. 2008); *Pease Bros. v. Am. Pipe & Supply Co.*, 522 P.2d 996 (Wyo. 1974).

19

thereafter comes into the possession of the party to be served." *Macchia*, 67 N.Y.2d at 594. This obviously provides some support for Townsend's position.

An earlier New York case also supports Townsend's argument. *McDonald v. Ames Supply Co.*, 22 N.Y.2d 111, 238 N.E.2d 726, 291 N.Y.S.2d 328 (1968). In *McDonald*, the court held that delivery of the summons to a receptionist in the building where the defendant foreign corporation's salesman had an office, where the receptionist was not the corporation's employee, did not confer jurisdiction over the defendant, even though the receptionist delivered the summons to the proper person. *Id.* at 114-15. The court in *McDonald* distinguished between whether "the [original] process server has acted reasonably in placing the summons within reach of the defendant," *id.* at 115, and cases where the process server left the summons with someone at a distance farther from the defendant.

The New York courts' analyses do not comport with Washington's service of process statute. RCW 4.28.080(15) says nothing about acting reasonably. The analysis in *Brown-Edwards* tracks the statutory language more closely than these contrary cases and harmonizes with the general reasoning of *Roth*, the only prior case from our court relevant to this issue.[6]

---

[6] The parties do not dispute our long-standing rule that actual notice alone does not constitute valid service of process. Suppl. Br. of Resp't at 6-7; *Brown-Edwards*, 144 Wn. App. at 113 (citing *Gerean*, 108 Wn. App. at 972); *Gerean*, 108 Wn. App. at 972 (citing *Thayer*, 8 Wn. App. at 40); *see also Haberman v. Wash.*

Finally, Townsend argues that "allowing anyone who does not reside with the defendant to be turned into a process server, whether or not that person consents to being a process server, introduces a great amount of uncertainty into the entire service of process issue." Pet. for Review at 16. Townsend states, "There would often be no accountability and no proof of service." *Id.* But, as noted in *Brown-Edwards*, no authority requires the process server's consent. And a process server need not reside with the defendant to serve her personally. The plaintiff bears the burden to establish valid service. *Streeter-Dybdahl*, 157 Wn. App. at 412. Accordingly, the plaintiff remains responsible for any failure to comply with the requirements for valid service of process.

Based upon the language of both RCW 4.28.080(15) and CR 4, Townsend fails to rebut by clear and convincing evidence Scanlan's contention that Townsend's father served her personally. Townsend's father was competent to serve Townsend. He delivered a copy of the summons and complaint personally to Townsend within the statute of limitations. Townsend's deposition testimony and her attorney's stipulation demonstrated proof of service in compliance with CR 4(g)(5) and (7). *See Hamill v. Brooks*, 32 Wn. App. 150, 151-52, 646 P.2d 151

---

*Pub. Power Supply Sys.*, 109 Wn.2d 107, 177, 744 P.2d 1032, 750 P.2d 254 (1987) ("Mere receipt of process and actual notice alone do not establish valid service of process." (citing *City of Spokane v. Dep't of Labor & Indus.*, 34 Wn. App. 581, 584, 663 P.2d 843 (1983))).

(1982) ("The time [of service] was established through [the defendant's] deposition and the affidavit of [the plaintiff]'s attorney." The defendant's "admission is the best possible evidence that he received the summons and complaint."). This was sufficient for personal service under both the statute and the court rule. Substitute service is not at issue here.

## CONCLUSION

Townsend's father was competent to serve process on Townsend, he delivered a copy of the summons and complaint personally to Townsend within the statute of limitations, and Townsend's testimony and her attorney's stipulation established proof of service. Scanlan therefore establishes effective personal service of process. We affirm the Court of Appeals.

Gordon McCloud, J.

WE CONCUR:

Madsen, C.J.

Stephens, J.

Johnson, J.

Wiggins, J.

Owens, J.

González, J.

Fairhurst, J.

Yu, J.